UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID PILLATOS,

    Plaintiff,

  v.

CAPT. SPENCER, *et al.*,

    Defendants.

Case No. C07-5399 FDB/KLS

REPORT AND RECOMMENDATION

**Noted For: August 1, 2008**

Presently before the Court is the motion for summary judgment of Defendants Marvin Spencer, Jeff Brateng and Darryl Herbison. (Dkt. # 27). Defendants claim that they are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies and cannot establish violation of his constitutional rights under 42 U.S.C. § 1983. Defendants support their motion with the Declarations of Stephen Berry, Patrick Cooper, Pam Lacipierre, Lee Bowman, Mary Scott, Lisa Shanahan, Judy Snow, and Marvin Spencer. (Dkts. # 28-35). Plaintiff filed his unsworn response in opposition. (Dkt. # 37).[1]

---

[1] Plaintiff's response is undated and does not contain a certificate of mailing. Although his response was docketed in a timely manner on May 19, 2008, Defendants complain that they did not

REPORT AND RECOMMENDATION - 1

For the reasons stated below, the court recommends that Defendants' motion for summary judgment be granted.

## I.  FACTS

### A.  Plaintiff's Allegations

Plaintiff alleges that corrections officers of the Pierce County Detention and Corrections Center (PCDCC) kept him on lockdown for an eleven day period, during which he was able to shower twice and he received one recreation period. (Dkt. # 4, p. 5[2]). Plaintiff alleges further that on March 12, 2007, Capt. Spencer ordered the Plaintiff to remain on lockdown until he left the Pierce County Jail. *Id*. During this seventeen day period, in which Plaintiff had no sanctions, Plaintiff alleges he received three showers, was allowed access to the yard every third day, was provided one telephone call, and no visits. *Id*.

Plaintiff alleges that on April 13, 2007, after he returned from his sentencing hearing, Capt. Spencer ordered that he be placed on suicide watch until he was transferred by the Department of Corrections. *Id*. While he was on suicide watch, his clothes, books, religious text, and legal work were taken and he was left in a cell in a green velcro dress with a suicide blanket. *Id*. Mental health personnel checked with him daily. *Id*., pp. 5-6. Plaintiff alleges that he did not need to be on suicide watch. He was not allowed to shower and was not allowed access to the yard, to telephone calls and pencils or paper. *Id*., p. 6.

---

receive Plaintiff's mailed copy until May 22, 2008. (Dkt. # 40).

Plaintiff also filed a motion to impeach (Dkts. # 38, 51) and a declaration, which was filed on his behalf by his sister, purporting to act as his counsel. (Dkt. # 50). These motions are the subject of a separate order.

[2]Plaintiff originally alleged that this lockdown began on January 5, 2007. In his response to Defendants' motion, Plaintiff now claims that this lockdown period was from January 11 through January 30, 2007. (Dkt. # 37, p. 4; Dkt. # 37-5, pp. 2-13).

REPORT AND RECOMMENDATION - 2

Plaintiff alleges that Sgt. Herbison chained his legs through the bars in his cell and his arms behind his back. He stayed that way for four and one-half hours with no bathroom breaks or water. *Id*., pp. 6-7.

Plaintiff further alleges that on March 12, 2007, Sgt. Brateng chained him to the floor in his cell with his feet chained to one side of the room and his hands to the opposite wall for three and one-half hours. *Id*. Plaintiff alleges that he was given no water or restroom breaks and that he urinated on himself during this time. *Id*. Although Plaintiff states that he broke a piece of his cell, he alleges that he did not resist officers that came to his cell and he freely gave up the broken pieces to Officer Shanahan. *Id*.

Plaintiff also alleges that Sgt. Brateng denied him the use of the prison grievance system on or about March 30, 2007. *Id*.

**B.     Exhaustion of Remedies**

According to Pam Lacipierre, her review of the grievance records of the inmates at the Pierce County Detention Center reveals that David Pillatos filed sixteen grievances in 2004, one in 2006 and one in 2007. (Dkt. # 30, p. 1). The grievance dated March 16, 2007, a copy of which was provided to the court, relates to Plaintiff's complaint that monies were taken from his inmate account without his permission. *Id*., p. 4. Plaintiff was under a security alert during the time he filed this grievance. (Dkt. # 35, citing to Dkt. # 28, Exh. E). Plaintiff claims that during that time he was not allowed to have pencils, pens or charcoal sticks. (Dkt. # 37, p. 15; Dkt. # 37, Exh. H),

On March 27, 2007, Plaintiff sent a kite to Sgt. Ferko stating that he had been kiting Sgt. Brateng and requesting a grievance regarding his being chained to the eye bolt until he urinated on himself. (Dkt. # 4, p. 3; Dkt. # 29, p. 6). Plaintiff stated that he requested a grievance form from Sgt. Brateng but that Sgt. Brateng would not respond. (Dkt. # 4, p. 3; Dkt. # 29, p. 6). A

REPORT AND RECOMMENDATION - 3

response from Sgt. Brateng states, in relevant part: "This is the 1st kite I received and you may not have a grievance form." (Dkt. # 4, p. 4).

**C.     March 7, 2007 In-Cell Restraint**

On March 7, 2007, Plaintiff was handcuffed behind his back at Sgt. Herbison's order for a few hours. (Dkt. # 43, p. 1). Plaintiff was restrained in this manner because he threw water on the smoke detectors and kicked the inner cell gates. *Id.*  Sgt. Herbison recalls March 7, 2007 as an unusual day with a number of individuals in the 3 South Cell Block being put in some type of restraints, including Plaintiff. (Dkt. # 44, p. 1).

The Chronological Record of Medical Care for Plaintiff on March 7, 2007 reflects that he had no injuries on March 7, 2007 noted at 12:25 p.m. (Dkt. # 42, p. 1). The record reflects that Plaintiff was sitting on the floor with his ankles and wrists cuffed and that he stated "I'm fine." *Id.*

**D.     March 12, 2007 In-Cell Restraint**

On March 12, 2007, Plaintiff damaged the call button and smoke detector in his cell with an 8" x 2" strip of metal he had pulled off the cell door. (Dkt. # 31, p. 2; Dkt. # 33, p. 1). Plaintiff was attempting to pry the smoke detector off the ceiling when Correction Officer Lisa Shanahan called for escorts and the sergeant to come in to restrain him. *Id.* Sgt. Brateng and Lt. Genga placed Plaintiff's feet in ankle restraints and handcuffed his right hand to an eyebolt in his cell. (Dkt. # 31, p. 2)

Less than one-half hour later after he was restrained, while Corrections Officer Shanahan was performing a welfare check, she asked Plaintiff if he needed water and Plaintiff told her to get away from his cell or he would kill her. (Dkt. # 33, p. 2). During her next check, approximately one hour later, Plaintiff had urinated between the gates of his cell. *Id.* She asked him why he did

REPORT AND RECOMMENDATION - 4

that and he responded because they would not let him use the restroom. *Id*. Officer Shanahan told him that this was not true and that he had not asked at any time during the approximate thirty minute welfare checks to use the bathroom. *Id*. Plaintiff again threatened to kill her. *Id*. According to Officer Shanahan, Plaintiff's pants were dry and he did not urinate on himself. *Id*.

On March 12, 2007, when Corrections Officer Bowman came on duty he was briefed about the Plaintiff causing damage to his cell and that the Plaintiff was in restraints. (Dkt. # 31, p. 2.). Plaintiff did not ask Officer Bowman for any restroom breaks and refused them each time he was offered one by Officer Bowman. *Id*.

The Chronological Record of Medical Care on March 12, 2007 reflects that medical personnel checked Plaintiff at 12:15 a.m., and again at 3:24 a.m. (Dkt. # 32, p. 2). No injuries were noted. *Id*. The record contains no notation that Plaintiff urinated on himself. (Dkt. # 32, p. 3). Mary Scott, the nursing supervisor for the Pierce County Jail Medical Clinic, asserts that if Plaintiff had urinated on himself, this would have been noted by the nursing staff. *Id*., p. 1.

Based on their recollections and review of various logs, Officers Bowman and Shanahan state that during the March 12th lockdown, Plaintiff was offered water at approximately at 3:43 a.m. and given breakfast at approximately 4:15 a.m. and that Plaintiff was moved to a booking cell at approximately 5:00 a.m. because of damage to his own cell. (Dkt. # 31 and 47; Dkt. # 33 and 48). Officer Shanahan wrote up an incident report and took pictures of the damage. (Dkt. # 33, p. 2; Dkt. # 28, p. 103).

Plaintiff asserts that he was placed in a new cell at 3:20 a.m. and that he was he was offered no water at 3:43 a.m., given no breakfast at 4:15 a.m. and was not moved at 5:00 a.m. (Dkt. # 51, p. 2). The court notes that the Chronological Record of Medical Care (Dkt. # 32, p. 3) gives support to Plaintiff's assertion as it shows the Plaintiff being moved to the "bkg cell" at 3:24

REPORT AND RECOMMENDATION - 5

a.m. on March 12, 2007.

**E.    Suicide Watch**

Judy Snow, the Clinical Coordinator for Pierce County Detention and Corrections, reviewed Plaintiff's behavioral log, custody reports and mental health contacts after being notified on April 13, 2007 of Capt. Spencer's concerns because Plaintiff was scheduled to be sentenced and there was an indication that he was contemplating suicide. (Dkt. # 34, pp. 1-2).

Ms. Snow concurred with Capt. Spencer that Plaintiff presented as a high risk to self and others and opines that suicide precautions appeared appropriate given Plaintiff's statements prior to sentencing of "I have no desire to live but I'm scared of going to hell" and his statement at sentencing to the judge, "I can't look at a sheet without thinking of suicide." *Id*.

Ms. Snow states that Plaintiff's mood to staff following his sentencing was inconsistent with a statement overheard by a mental health personnel that he "has been so angry the last two days that it is making my body sick." According to Ms. Snow, this was a strong suggestion that his mood and behavioral content were not consistent with his presentation to mental health staff. *Id*. Ms. Snow asserts that throughout his incarceration, Plaintiff indicated he had thoughts and impulses to harm others and he was known to have a long history of poor impulse control and acting-out in an aggressive manner. This included the recent discoveries on March 29, 2007 of a screw missing from Plaintiff's cell, Plaintiff's admission of tampering with the security screen on March 14, 2007, and Plaintiff's removal of a strip from the frame of his cell door and threat to "take out an officer before I leave," on March 11, 2007. *Id*.

Mr. Snow further opines that Plaintiff's presentation of suicidal preoccupation and threats on April 13, 2007 in addition to his long history of acting-out with poor impulse control and threats of harm strongly suggested he presented an imminent danger to himself despite Plaintiff's

REPORT AND RECOMMENDATION - 6

attempt to present himself in a favorable light to mental health staff. *Id*. Ms. Snow instructed mental health staff to assess him twice daily until he left for prison. *Id*. Plaintiff was on suicide watch for 6 days, which Ms. Snow believes is not excessive given his behavior and presentation. *Id*.

**F.     Lockdowns and Hours Out**

Captain Marvin Spencer declares that he did not order the lockdown of Plaintiff on January 5, 2007. (Dkt. # 35, p. 1). However, he did order his lockdown on March 11, 2007. *Id*.

Capt. Spencer also reviewed the hour out logs identified in Stephen Berry's Declaration as Exhibits F and G (Dkt. # 28), and declares that from January 5 to January 16, 2007, Plaintiff was allowed one hour out of his cell every day except for January 6, 2007 when the hour out was taken away for the assault on another inmate. *Id*., p. 2 citing Dkt. # 28, Exhs. F and G. There is no hour out log for January 14, 2007. *Id*.

From March 13, 2007 to March 29, 2007, Plaintiff had an hour out on March 21, March 28 and March 29. *Id*. An inmate may shower during his hour out. *Id*. The Behavior Log, Exhibit B, reflects that Plaintiff showered on March 14, March 21 and March 28, 2007. *Id*. There are no hour out logs for March 16, 17, 18 and 27, 2007. *Id*.

Capt. Spencer imposed a security alert on Plaintiff on March 13, 2007 for breaking a mirror, slipping out of his handcuffs and threatening to stab someone. *Id*. A review was set for 15 days, a shower was allowed one time per week with hygiene times made available to Plaintiff in his cell. *Id*. citing Dkt. # 28, Exh. E (Security Alert 3/13/07, SA ID 44) and Exh. C (Incident Reports dated 1-18-07, 3-7-07, and 3-11-07)).

REPORT AND RECOMMENDATION - 7

## II.  STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c).  In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e).  When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id*.

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III.  SUMMARY JUDGMENT EVIDENCE

**A.     Plaintiff's Summary Judgment Evidence**

Although Defendants complain that Plaintiff did not submit an affidavit in support of his opposition to their motion for summary judgment, he did file a response and his *pro se* complaint

REPORT AND RECOMMENDATION - 8

was verified. Because his response and complaint are "based on personal knowledge and set [] forth specific facts admissible in evidence, [they] may be considered in opposition to summary judgment. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 & n. 1 (9th Cir. 1987).

**B.     Defendants' Summary Judgment Evidence**

Attached to Stephen Berry's Declarations are various records of the Pierce County Detention and Correction Center including Plaintiff's information report, behavior log, partial incident reports, reclassification reviews, security alerts, hour out logs, and welfare check logs. (Dkts. # 28, 41 and 49). Declarant Berry submits these documents as custodian of the records for the PCDCC. *Id*. However, the attachments contain numerous hearsay entries and notations made by unknown persons. Fed.R.Civ.P. 56(e)(1) requires that a supporting affidavit "must be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify to the matters stated."

For purposes of Defendants' summary judgment, the attachments to Mr. Berry's declarations do not meet these requirements and have not been considered by the Court except to the extent they are supported by declarations of individuals swearing to personal knowledge of the contents of the exhibits. *See, e.g.*, Declaration of Darryl Herbison (Dkt. # 44 (based on review of incident reports attached to Dkt. # 41)).

## IV.   DISCUSSION

**A.     Failure to Exhaust**

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

REPORT AND RECOMMENDATION - 9

42 U.S.C. § 1997e(a).

This requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). Further, "[a]ll 'available' remedies" must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Id.* at 524. Inmates must exhaust prison grievance remedies before filing suit if the grievance system is capable of providing any relief or taking any action in response to the grievance, and must do so in a timely manner. *Booth v. Churner*, 531 U.S. 956, 121 S. Ct. 1819, 1825 (2001); *Woodford v. Ngo*. 548 U.S. 81, 126 S.Ct. 2378, 2386-87 (2006). The purpose of the exhaustion requirement is to "reduce the quantity and improve the quality of prisoner suits; . . . [and] afford corrections officials . . . opportunity to address complaints internally. . . . 42 U.S.C. § 1997e(a). *McKart v. United States*, 395 U.S. 185, 195 (1969).

In deciding whether the PLRA exhaustion standard has been met, it must be remembered that § 1997e(a) is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have the burden of raising and proving the absence of exhaustion. *Id*. There can be no "absence of exhaustion" unless some relief remains "available," and a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. *Brown v. Valoff*, 422 F.2d 926, 937 (9th Cir. 2005).

Plaintiff does not dispute that he did not exhaust his administrative remedies as to the claims in this lawsuit. (Dkt. # 37, p. 15). Plaintiff argues that he was denied access to the grievance system numerous times but has only one kite to prove that he was denied access. *Id*. Plaintiff also contends that he was not allowed to have pencils, pens or charcoal, making it difficult to write. *Id*.

REPORT AND RECOMMENDATION - 10

On March 27, 2007, Plaintiff sent a kite to Sgt. Ferko stating that he had requested and been refused a grievance form from Sgt. Brateng. (Dkt. # 4, p. 3; (Dkt. # 29, p. 6). Sgt. Brateng responded, in relevant part: "This is the 1st kite I received and you may not have a grievance form." *Id*., p. 3.

Before a plaintiff can pursue a civil action with respect to prison conditions, he or she must exhaust the administrative remedies that are available. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738-40 (2001). This provision does not require exhaustion of *all* remedies; it requires the exhaustion of "such administrative remedies as are available." *Id*. (emphasis added).

Here, Plaintiff complains that administrative remedies were not available to him because he was denied a grievance form and he was denied writing utensils. However, Plaintiff was able to submit a kite while he was under security alert or lockdown and there is no evidence that Plaintiff pursued the issue raised in the first kite to the next level of review.

In addition, the record reflects that Plaintiff filed a grievance on March 16, 2007, claiming that monies were being taken from his inmate account without due process of law. (Dkt. # 30, p. 4). This grievance was filed during the time Plaintiff was on security alert (*see, e.g.* Dkt. # 35, p. 2) and therefore, directly contradicts Plaintiff's claims that he was unable to file any grievances due to the unavailability of writing utensils.

However, there is no summary judgment evidence before the court as to what administrative remedies were available to Plaintiff while he was under a security alert or lockdown and in particular, what administrative remedies were available to Plaintiff with respect to his kite of March 27, 2007. Defendants merely provide the conclusory statement of Capt. Spencer that "all inmates are provided access to a grievance process." (Dkt. # 35, p. 2).

REPORT AND RECOMMENDATION - 11

Defendants must demonstrate that pertinent relief remained available – for example, relevant evidence might include statutes, regulations or other official directives explaining the scope of the administrative review process; testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case. *See, e.g. Brown*, 442 F.3d at 936-37, citing *Wyatt*, 315 F.3d at 1119; *Brown v. Croak*, 312 F.3d 109, 113 (3rd Cir. 2002).

Thus, viewing the evidence in the light most favorable to the Plaintiff, it appears that Defendants have failed to prove their affirmative defense of failure to exhaust administrative remedies and their motion for summary judgment on this ground should be denied.[3]

**B.     Standard of Proof Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections.

---

[3]However, to the extent Plaintiff alleges that Defendants failed to follow their grievance procedure (Dkt. # 4, p. 7), such allegation does not give rise to a § 1983 claim. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988), and Defendants' motion for summary judgment on this ground should be granted.

REPORT AND RECOMMENDATION - 12

*Davidson v. Cannon*, 474 U.S. 344 (1986).

Plaintiff claims that he was placed on lockdown, in in-cell restraints and on suicide watch in violation of his Fourteenth Amendment rights. Because pretrial detainees rights under the Fourteenth Amendment are comparable to prisoners rights under the Eighth Amendment, we apply the same standards. *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998) (internal citations omitted); *see also Carnell v. Grimm*, 74 F.3d 977 (9th Cir. 1996).

**C.  Plaintiff's Cruel and Unusual Punishment Claims**

**1.  In-Cell Restraints, Lockdowns and Hours Out**

It is only "'the unnecessary and wanton infliction of pain' . . . [which] constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986), *citing Ingram v. Wright*, 430 U.S. 651 (1977). "[T]he question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320-321. Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*; whether the force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1 (1992).

When determining whether the force is excessive, the court should look to the "extent of the injury . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 quoting

REPORT AND RECOMMENDATION - 13

*Whitely*, 475 U.S. at 321.  There is no need for a showing of a serious injury as a result of the force, but the lack of such an injury is relevant to the inquiry.  *See Hudson*, 503 U.S. at 7-9[4].  Because the use of force relates to the prison official's legitimate interest in maintaining security and order, the court must be deferential when reviewing the necessity of using force.  *See Whitley*, 475 U.S. at 321-22.

The competent summary judgment evidence before the court reflects that Plaintiff was placed in in-cell restraints for periods of approximately three to four hours on March 7 and March 12, respectively.  (Dkts. # 43, 31-33, 47-48).  During each of these periods, prison guards checked on Plaintiff in approximate thirty minute to one hour intervals.  (Dkts. # 31, 33).  Plaintiff was offered water and restroom breaks, which he refused.  (Dkts. # 31, 33).  Plaintiff was seen by medical health personnel.  (Dkts. # 32 and 42).   The medical report for March 7, 2007, reflects that at 12:25 p.m., Plaintiff stated, "I'm fine," and was sitting on the floor with his ankles and wrists cuffed."  (Dkt. # 42, p. 3).  The Chronological Records of Medical Care for March 7 and March 12 reflect that Plaintiff suffered no injuries.  *Id.*

The record also reflects that Plaintiff was placed in in-cell restraints on March 7, 2007 because he threw water on the smoke detectors and kicked the inner cell gates.  (Dkt. # 43, p. 1).  Plaintiff was placed in in-cell restraints on March 12, 2007 because he damaged the call button and smoke detector in his cell with an 8" x 2" strip of metal he pulled off his cell door.  (Dkt. # 31,

---

[4]Defendants also argue that Plaintiff's claims must be dismissed pursuant to 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act (PLRA) as there has been no allegation of physical injury.  (Dkt. # 27, p. 12).  The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  However, this provision is inapplicable to allegations of constitutional violations not premised on mental or emotional injury.  *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).  As Plaintiff does not seek compensatory damages for mental or emotional injury, but for violation of his Fourteenth Amendment rights, Defendants' motion for summary judgment on this ground should be denied.

REPORT AND RECOMMENDATION - 14

p. 2).

Plaintiff claims that Defendants failed to address his claim that his lockdown for eleven days in January, when he received only two showers and one recreational period, was unconstitutional. (Dkt. # 32, p. 4). Plaintiff also disputes the amount of time he was allowed out of his cell (on March 13, 21 and 28, 2007) and complains that he had to use some of the time out of his cell to shower and make attorney phone calls. (Dkt. # 37, p. 13). Plaintiff also asserts that the shower logged on March 14th is false because it was logged only by Defendant Herbison. *Id*. These facts, even if disputed, do not preclude summary judgment.

Although deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation, *see, e.g., Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), *amended by* 135 F.3d 1318 (9th Cir.), a "temporary denial of outdoor exercise with no medical effects, is not a substantial deprivation." *May v. Baldwin*, 109 F.2d 557, 565 (9th Cir. 1997); *see also Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998). Prison officials may restrict outdoor exercise on the basis of disciplinary needs. *See Spain*, 600 F.2d at 199.

Therefore, even accepting Plaintiff's allegations as true, the court finds no substantial deprivations. This is so even accepting as true Plaintiff's allegations that he had to use portions of his outdoor exercise time to shower, that he did not receive outdoor exercise time on particular dates, or that he received limited recreational time during the eleven or seventeen day lockdown periods referred to in his Complaint. (Dkt. # 4, p. 5). Although Plaintiff argues that these lockdowns were unconstitutional, there is no evidence that these lockdowns were not justified or that they were oppressive or constituted cruel and unusual punishment. *See also, Hayward v. Procunier*, 629 F.2d 599 (1980)(five month lockdown and deprivation of outdoor exercise in

REPORT AND RECOMMENDATION - 15

response to genuine emergency does not violate the Eighth Amendment).

The record also reflects that Plaintiff claims no injuries and suffered none, he was engaged in destructive activities within his cell necessitating the application of the in-cell restraints, the restraints were utilized for a short period of time during which Plaintiff was monitored by corrections officers and health care personnel.

Accordingly, the court finds that Plaintiff has failed to establish a material issue of fact that prison officials used excessive force constituting cruel and unusual punishment relating to his placement in in-cell restraints or lockdowns.

### 3. Suicide Watch

The inquiry relevant to Plaintiff's claim regarding his placement on suicide watch is (1) whether placement of suicidal inmates in safety cells constitutes an infliction of pain or a deprivation of the basic human needs, such as adequate food, clothing, shelter, sanitation, and medical care, and (2) if so, whether prison officials acted with the requisite culpable intent such that the infliction of pain is "unnecessary and wanton." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In prison conditions cases, prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. *Id*.; *Wilson v. Seiter*, 501 U.S. 294, 302-02 (1991); *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). Similarly, placement of pretrial detainees in safety cells is "punishment" in violation of the Fourteenth Amendment only if prison officials act with deliberate indifference to the inmates' needs. *Anderson v. Kern*, 45 F.3d 1310, 1323 (1995)(citing *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir. (en banc), *cert. denied*, 502 U.S. 1074 (1991).

The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know[] of and disregard[] an excessive risk to inmate health and safety; the

REPORT AND RECOMMENDATION - 16

official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 4511 at 834.

Plaintiff alleges that although he had receive no sanctions and there was no need for a suicide watch, Capt. Spencer ordered him to be placed on suicide watch while Plaintiff was in court during his sentencing hearing. (Dkt. # 4, p. 5). Plaintiff complains that during the time he was on suicide watch, he was forced to wear a green velcro dress, his personal property was taken from him, mental health personnel check with him daily, he was not allowed to shower, and he was given no access to the yard, telephone, or pencils and papers. *Id*., pp. 5-6. Plaintiff was on suicide watch for six days. (Dkt. # 34, p. 3). While he was on suicide watch, Plaintiff was assessed by a mental health professional twice per day. *Id*.

Defendants contend that the decision to place Plaintiff on suicide watch was based on statements Plaintiff made indicating that he might be suicidal, threats to officers or individuals in the corrections system, with the concurrence of a mental health professional. (Dkt. # 34). PCDCC's clinical coordinator agreed with Capt. Spencer's concerns and decision to place Plaintiff on suicide watch after reviewing Plaintiff's behavioral log, custody reports and mental health contacts. *Id*., p. 2. Ms. Snow opines that the sentencing period for any inmate is a time of increased risk for self harm, and given Plaintiff's presentation it was her impression that he was at risk. *Id*. Ms. Snow testified that Plaintiff presented with significant indicators for high risk behavior despite attempting to present himself in a favorable light to mental health staff and concurred with Capt. Spencer's decision to place Plaintiff on suicide precautions. *Id*.

Ms. Snow noted in particular, Plaintiff's statements prior to his sentencing of "I have no desire to live but I'm scared of going to hell" and his statement at sentencing to the judge, "I can't look at a sheet without thinking of suicide." *Id*. Ms. Snow also based her concurrence on the

REPORT AND RECOMMENDATION - 17

inconsistencies between Plaintiff's mood to staff and his behavior, his history of poor impulse control and acting-out in an aggressive manner, and recent reports of misconduct in March of 2007 (missing screw, tampering with security screen and removal of strip from cell frame, and threat to "take out an officer before I leave.") *Id.*

In response, Plaintiff argues that aside from Ms. Snow, no mental health professional has ever considered him suicidal and that every mental health professional that talked to him said he was calm, smiling, had received no sanctions and was rational. (Dkt. # 37, p. 11).

Reviewing all the facts in the light most favorable to Plaintiff, the undersigned concludes that Plaintiff has failed to raise a triable issue of fact. The undisputed record reflects that PCDCC officials had a legitimate penological basis for placing Plaintiff on suicide watch. Even assuming that Plaintiff was deprived of his personal items, a shower, the yard, telephone, and pencils and paper for a period of six days, the court finds that such deprivation is constitutionally justifiable. There is sufficient evidence to support a factual finding that the suicide watch was necessary for Plaintiff's safety and that he was on suicide watch for only a short period of time. *See Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (in evaluation challenges to conditions of confinement, court may consider the length of time prisoners must go without basic human needs).

In addition, Plaintiff does not allege and there is no evidence that Plaintiff was subjected to pain or deprived of the basic human needs, such as adequate food, clothing, shelter, sanitation, and medical care during the time he was on suicide watch. The record reflects that Plaintiff was seen twice per day by a mental professional. (Dkt. # 34, p. 3). Thus, the court recommends that Defendants' motion for summary judgment on this claim be granted.

**D.   Plaintiff's Due Process Claim**

Plaintiff alleges that he was not infracted for any misconduct and that the lack of infractions

REPORT AND RECOMMENDATION - 18

and disciplinary hearings are unconstitutional.  (Dkt. # 4, pp. 5-7; 37, pp. 1-2).

There is no constitutional right to a particular custody status within a prison or jail setting. *Hewitt v. Helms*, 459 U.S. 460, 467-468 (1983).  An inmate does not have a right to be free from administrative segregation. *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993).  Inmates do not enjoy a liberty interest in remaining in the general population of a jail or prison. *Id*. at 989.  The Ninth Circuit and Supreme Court agree that inmates cannot rely on the policies and procedures of a jail or prison to interject a liberty interest and a constitutional civil rights due process claim. *Id*.; *Sandin v. Conner*, 115 S. Ct. 2293, 2300 (1995).

As Plaintiff does not have a right or liberty interest to be housed in any particular unit and Defendants' alleged actions can be attributed to legitimate penological goals, *i.e.*, the nature of Plaintiff's behavior while he was at the PCDCC, Plaintiff's claim that he was wrongfully denied infractions and/or disciplinary hearings should be dismissed.

**E.     Qualified Immunity**

Defendants urge that they are, in any event, entitled to qualified immunity from Plaintiff's claims.  As the Court has determined that Plaintiff has failed to allege deprivation of an actual constitutional right as to his Eighth Amendment claims of cruel and unusual punishment and conditions of confinement, the issue of qualified immunity need not be reached. *See e.q., Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

**V.  CONCLUSION**

For the reasons stated above the Court should **GRANT** Defendants' motion for summary judgment (Dkt. # 28) and Plaintiff's Complaint (Dkt. # 4) should be **DISMISSED WITH PREJUDICE**.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

REPORT AND RECOMMENDATION - 19

the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 1, 2008**, as noted in the caption.

DATED this 8th day of July, 2008.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20